# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,

vs.

REX McCRIGHT,

               Defendant.

No. CR 03-31

**ORDER**

The matters before the Court are the Petition for Warrant or Summons for Offender Under Supervision (docket 36) and Defendant's Motion for Modification of Restitution and the Amendments thereto (dockets 34 and 39, respectively).

A hearing on the petition and motion was held May 22, 2007. Defendant was personally present and represented by two lawyers, Attorney Thomas Fiegen (privately retained) and Jonathan Hammond (CJA panel attorney).[1] The United States was represented by Assistant United States Attorneys Sean Berry and Martin McLaughlin. Also present was Senior United States Probation Officer Michael Mims from the Northern District of Iowa.

At the conclusion of the hearing, the court announced it would not revoke the

---

[1] Defendant previously represented he was indigent and needed a court-appointed counsel. Thereafter Defendant or his wife hired Mr. Fiegen, even though only one attorney was necessary for this issue and Mr. Hammond was fully able to present this information to the court without Mr. Fiegen. The court finds that Defendant is not indigent and has the ability to pay his own attorney fees. Accordingly, the court will require Defendant to reimburse the United States for Mr. Hammond's time spent on this supervised release matter.

supervised release of Mr. McCright on the allegations in the Petition. Rather, the court stated it would be ordering monthly restitution payments in an amount to be determined and set forth in a written order. The court gave Defendant the option to return to open court to receive the decision of the court or to receive the decision in written order. Mr. McCright stated his preference to receive the decision in writing rather than returning to the Northern District for a continuation of the hearing. The court advised McCright that he would have ten days after this order was filed to file an appeal.

The issues identified for resolution are: 1) Should the court reduce the amount of restitution owed to victims from $516,266.19; 2) Should the court enter an order reflecting that the individual victim claims are satisfied except for $13,600 owed to Jerry and Trudy Schwarting; 3) Should the court transfer $502,666.19 of the individual restitution to Mutual Trust Life Insurance Company; and 4) The amount of the monthly restitution payment.

## I. RELEVANT PROCEDURAL HISTORY

On April 25, 2003, a United States Grand Jury for the Northern District of Iowa returned a six-count Indictment against Defendant. Each count alleged mail fraud, a violation of 18 U.S.C. § 1341. At the time of the criminal activity alleged in the Indictment, Defendant was a general insurance agent for Mutual Trust Life Insurance Company (hereinafter MTL). The charges arose from Defendant's scheme to defraud and obtain money from Defendant's insurance clients using false representations. Simply put, Defendant convinced his MTL clients to "loan" or "invest" money with him based on false representations and promises that they would earn large returns by so doing. After gaining both their trust and their money, Defendant used their money for his own purposes. He

2

spent the majority of it on himself and spent some of it to lull other victims by paying them some "interest" on their "investments." When MTL began investigating Defendant's financial transactions with his clients, Defendant urged his clients to falsely state that they had no financial dealings with Defendant.

On August 21, 2003 Defendant pled guilty before a magistrate judge to Count 5 of the Indictment pursuant to a plea agreement which provided in pertinent part that Defendant "will pay full restitution to all victims of the offense to which he is pleading guilty as well as to all the [sic] those victimized as part of the same course of conduct and common scheme adjudged as relevant conduct…." Plea Agreement, p. 3, ¶ 9. His plea was accepted by the district court on September 10, 2003.

McCright appeared for sentencing on April 15, 2004. As part of the sentencing proceeding, McCright agreed the loss for purposes of the Guideline computation was more than $500,000 but less than $800,000. PSIR p. 18, ¶ 39. Defendant did not object to the computation of restitution owed to the victims as stated in paragraph 80 of the presentence investigation report.[2] He agreed the amount of restitution due the victims, including Mutual Trust Life Insurance Company, was $516,266.19. McCright did not appeal his conviction and sentence, including the restitution amount.

After serving his prison sentence of thirty months, Defendant was released on supervised release on July 21, 2006. He requested that his supervision be transferred to the District of Nebraska which was accommodated. United States Probation Officer Kit Lemon of the District of Nebraska directed Defendant to make monthly restitution

---

[2]After release of the draft presentence investigation report, Defendant filed an objection to paragraph 80 of the report apparently claiming that no restitution was owed to Mutual Trust Life Insurance Company because they were not a victim but had merely voluntarily reimbursed victims in the amount of $76,135.31. This object was not pursued at sentencing, in all likelihood because of the direction in 18 U.S.C. § 3663A(j)(1).

3

payments in the amount of $400 after McCright's cash flow was determined to be over $1,300. McCright refused to pay more than $40 per month and claimed he did not owe the amount ordered by the court. The petition for revocation and the motions at issue followed.

According to Attorney Fiegen, between the time of the sentencing and the present, MTL entered into settlement agreements with all the individual victims, paying all victims except Jerry and Trudy Schwarting a settlement amount "in excess of their court ordered restitution amount." Motion   P. 2 ¶5. According to Attorney Fiegen, the Schwartings received a settlement payment from MTL that was approximately $13,600 less than their court ordered settlement. Apparently, MTL and Defendant also entered into an agreement. In return for McCright's assignment of all of his insurance renewal commission back to Mutual Trust, Defendant agreed to pay directly to MTL a total of $ 502,666.19 at the rate of $100 per month and agreed to pay $13,600 to the Scwartings in small monthly payments. This court was not consulted about this agreement, knew nothing about it and did not approve the settlement terms, some of which are contrary to the judgment and commitment order and the restitution statutes as will be discussed herein. No documentation was presented to the court from the victims that they have been reimbursed by MTL and there is nothing in the record to suggest the victims have received any notice that MTL now claims restitution based on payments to them.


## II.  LEGAL ANALYSIS


In this case, restitution was ordered pursuant to 18 U.S.C. §  3663A and U.S.S.G. § 5E1.1(a)(1). The amount of restitution and the victims were identified in the presentence report. Throughout the sentencing hearing Defendant did not object to the restitution

4

amounts and thus the court ordered that the victims set forth in the judgment and commitment order were to be paid a total of $516,266.19 based on a total loss of $516,266.19. Judgment in a Criminal Case p. 5. Defendant was ordered to make payments while incarcerated in accordance with the Bureau of Prison's Financial Responsibility Program. Judgment in a Criminal Case p. 6. Any remaining restitution was to be paid as a condition of supervised release and collected by the Clerk of Court for distribution to the victims named in the judgment. Judgment in a Criminal Case p. 4. Defendant did not appeal. Thus the order, including the portion of the order relating to restitution, became a final judgment by operation of law. 18 U.S.C. § 3664(o).[3] Thus the Defendant can not now claim the amount of the loss is less than is provided in the court's order. As a practical matter, Defendant has made no showing that the settlement amount with MTL represents the full amount of the loss to the victims as compensated by insurance company. Rather, the settlement numbers were arrived at by the parties using some method not revealed to the court. Even the Defendant admits this in his papers by generally stating that all of the victims reimbursed by Mutual Trust except the Schwartings received more than the restitution awarded by the court. Defendant has made no showing that any victim has been compensated in excess of their loss and assigned their restitution claim to MTL. Thus, the court declines to reduce the restitution amount and order restitution be paid to MTL in excess of the amount stated in the judgment.

The only issue for this court that remains is to set a monthly restitution amount and order it paid. In so doing, the court is bound to follow the law and order that the Schwartings, the individual victims be fully compensated before the insurance company

---

[3]An order of restitution under 18 U.S.C. § 3663A is issued and enforced in accordance with section 3664. 18 U.S.C. § 3663A(d).

is reimbursed.[4]

   In determining the amount of the restitution payments, the court is to consider the factors at 18 U.S.C. § 3664(f)(1)(B)(2) which are: the financial assets of the defendant and whether any of the assets are jointly controlled; the projected earnings and other income of the defendant; and any financial obligations of the defendant, including obligations to dependents.

   The defendant has provided conflicting statements concerning his financial status and that of his spouse. In an attempt to facilitate the discovery of his true financial status, he was subjected to a telephonic debtor's examination prior to the hearing. The court also received his statements during the revocation hearing. It appears the Defendant in each successive financial statement has attempted to portray all of his funds as devoted to payment of other expenses for he and his wife. The information contained in his latest financial statement of May 7, 2007 is confusing. What the statement does show is unnecessary or over stated amounts for such things as gifts, charitable contributions, clothing and gasoline for pleasure trips. The financial statement shows Defendant's 2001 Chrysler was paid off June 7, 2007, thus freeing $359.48 per month to be applied to his restitution obligation.

   The court finds Defendant can easily pay $400 per month toward his restitution beginning July 8, 2007. All restitution must be paid through the Clerk of Court for the Northern District of Iowa and not directly to the victims. Unless and until Defendant provides further documentation to the court from the victims assigning their restitution to

---

   [4]In a case where a victim has received compensation from an insurance company or any other source with respect to a loss, the remaining victims are to be fully compensated before any restitution is paid to the provider of compensation. 18 U.S.C. § 3664(j)(1).

6

MTL, and specifying what has been paid to each victim, restitution shall be paid as provided in the judgment.

### III. CONCLUSION

Therefore the Court orders as follows:

1.      All provisions in the Judgment entered in this case on April 16, 2004 (docket 28) remain in full force and effect except as specifically modified hereafter in this order.

2.      Defendant shall make restitution in the amount of $400 per month beginning June 15, 2007 and continuing each month thereafter until the restitution is paid in full or the court enters a subsequent order.  All restitution is due and payable to the Clerk of Court for the Northern District of Iowa for distribution to the payees set forth in the judgment.

3.      Pursuant to 18 USC the Clerk of Court shall apply all restitution first to the victims until they are paid in full and thereafter shall pay restitution to Mutual Trust Insurance Company the amount in the judgment ($76,135.31).

4.      Defendant is ordered to reimburse the United States for Mr. Hammond's legal services and costs relating to this supervised release matter.  The amount of the reimbursement owed will be determined after Mr. Hammond files his CJA voucher and will be the subject of a later order.  Defendant shall reimburse the United States for attorneys fees at the rate of $50 per month beginning July 1, 2007 and continuing on the first day of each month until the entire sum is paid in full.  Payments shall be sent to the United States Clerk of Court for the Northern District of Iowa.

5.      The Petition to Revoke Supervised Release (docket no. 36) is denied.

6.      The Motion for Modification of Restitution and amendments thereto (docket nos. 34, 39) are denied.

7.     Defendant has ten days from the date shown on this order to file a written notice of appeal from this order.  The appeal must be filed with the United States Clerk of Court for the Northern District of Iowa at Cedar Rapids, Iowa.  If Defendant fails to file a written notice of appeal within the ten day period he forever gives up his right to challenge this order.  If Defendant wishes to appeal but can not afford the service of an attorney, he can apply for a court appointed counsel by filling out the required forms.

IT IS SO ORDERED.

Dated this 7th day of June, 2007.


LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

8